## Williams v. Farmers Ins. Exchange
*[Cite as 7 AOA 227]*

*Case No. L 89-404*
*Lucas County, (6th)*
*Decided October 19, 1990*

*Gary F. Kuns, for Appellant.*

*Gerald R. Kowalski, for Appellees.*

This matter is before the court on appeal from the Lucas County Court of Common Pleas wherein summary judgment was granted in favor of appellees Farmers Insurance Exchange of Farmer's Underwriters Association ("Farmers") and Michigan Claim Service, Inc. Appellant asserts the following assignment of error:

"The Trial Court erred as a matter of law by not finding that the Defendant, Farmers Insurance, effectively waived the arbitration provision as a result of its conduct and correspondence with Plaintiff."

The facts giving rise to this appeal are as follows. On August 8, 1983, appellant Thomas Williams was involved in a car accident with another automobile driven by Carol Payne. Williams sustained injury. At the time of the accident, Payne had no liability insurance. Williams maintained a policy with Farmers. Williams' policy included a provision for uninsured motorist benefits. The policy provided that if the insured and insurer disagreed on the amount of payment which was due under the uninsured motorist provision of the policy, either party could demand that the issue be submitted to arbitration. As a result of the accident, Williams filed a claim with Farmers for uninsured motorist benefits.

Farmers retained Michigan Claim Service, Inc. to investigate Williams' claim and to adjust his losses. Randy Bradshaw was the adjuster for the claim service who was assigned to Williams' claim. Bradshaw conducted an investigation and within weeks issued a check to Williams for the property damage to his automobile. Bradshaw also concluded that Williams was not at fault for the accident and, therefore, Williams was entitled to uninsured motorist coverage. Beginning in 1983, Bradshaw wrote several letters to appellant's counsel requesting medical documentation of appellant's injuries so that Williams' claim could be settled.

On June 14, 1985, Williams' counsel sent the requested medical documentation to Bradshaw. A report, authored by Williams' physician, Dr. G. B. Blossom, indicated that Williams' had sustained a neck injury and was faced with the possibility of a thirty-five percent disability. Along with the doctor's report, Williams' counsel sent a letter indicating that as a result of the accident, Williams had incurred medical bills in the amount of $1,244.07 and that Williams' had accumulated a lost wage claim in the amount of $1,500.

In a July 23, 1985 letter to Williams' counsel, Bradshaw advised that Farmers needed more information and time to determine the value of appellant's uninsured motorist claim. Thus, Farmers suggested that Williams file suit against the uninsured motorist Carol Payne in order to protect his claim from the running of the two year statute of limitations. Farmers also requested that Williams undergo an independent medical examination so that Farmers could obtain further information on Williams' condition. Finally, Bradshaw's letter stated that Farmers would agree to take over the pending lawsuit against Carol Payne once Williams' uninsured motorist claim was settled.

On July 31, 1985, Williams filed a personal injury action against Carol Payne (case No. 86-2172). In a November 1, 1985 letter to Bradshaw, Williams' counsel informed Bradshaw that his client was in a position to file for a default judgment against Payne. Williams' counsel inquired as to whether or not Farmers now intended to take over the lawsuit against Payne. A copy of Williams' complaint was attached to the November 1, 1985 letter. When Bradshaw failed to respond, Williams' counsel once again wrote a letter to Bradshaw on December 26, 1985, inquiring as to whether or not Farmers had imminent plans to take over Williams' lawsuit against Payne.

On September 30, 1985, Farmers received a medical report from Dr. Fred Hawkins, the physician who had conducted Williams' independent medical exam for Farmers. Dr. Hawkins essentially found Williams' injuries to be minimal. Based on this report, Farmers offered to settle the claim for $5,000. Williams rejected this offer on January 3, 1986. In a January 30, 1986 letter, Bradshaw informed Williams' counsel that the $5,000 offer was Farmers final offer. Bradshaw again reiterated Farmers' position that they would take over the lawsuit once Williams' uninsured motorist claim was settled. Bradshaw stated that Farmers anticipated Williams' acceptance of the offer and/or Williams' filing for arbitration.

In an April 10, 1986 letter, Williams' counsel informed Bradshaw that a default judgment in the amount of $57,500 had been entered against Carol Payne.

Bradshaw responded on April 30, 1986. In his letter, Bradshaw stated that Farmers had thoroughly reviewed the situation, including the entry of the default judgment, and had decided to once again extend their settlement offer of $5,000. Bradshaw further advised that should the above offer remain unacceptable, Williams' next step would be to proceed with arbitration under the terms of the policy. When Williams' counsel failed to respond, Bradshaw sent another letter on June 2, 1986, stating that Farmers was awaiting a response to their offer and/or copies of Williams' arbitration filings.

On August 18, 1986, Williams' counsel responded to Bradshaw's letters indicating that Farmers' $5,000 offer to settle was totally unacceptable to Williams since under his policy he was legally entitled to $57,500, the amount of the default judgment rendered against Carol Payne. Williams' counsel further stated that Williams would *not* be submitting arbitration filings.

Farmers having failed to pay Williams' payment demand of $57,500, Williams filed a complaint against Farmers and Michigan Claim Service, Inc., on February 13, 1987, alleging that Farmers and Michigan Claim had acted in bad faith by refusing to be bound by the default judgment. In their answer, Farmers and Michigan Claim alleged that any damages sustained by Williams were caused by Williams or Williams' counsel.

On February 5, 1988, Williams filed a motion for summary judgment arguing that the undisputed facts showed that Farmers was bound by the default judgment which was entered against Carol Payne. In their cross-motion for summary judgment, Farmers and Michigan Claim argued that they were not bound by the default judgment since they were not a party to the action in which it was rendered.

On November 28, 1989, the court denied Williams' motion for summary judgment and granted Farmers' and Michigan Claim's motion for summary judgment. The court found that on the authority of this court's decision in *Nationwide Mut. Ins. Co. v. Sams* (June 9, 1989), Erie App. No. E-88-27, unreported, Farmers was not bound by the default judgment rendered against the uninsured motorist Carol Payne since there had been no adjudication on the merits of Williams' claim. The court further found that the terms of Williams' insurance contract controlled noting that no evidence had been presented to show that the arbitration provision had been waived and that to resolve the dispute, Williams should simply demand arbitration. It is from this judgment that appellant appeals.

In his first assignment of error, Williams contends that Farmers, through its conduct and correspondence with Williams, waived the arbitration clause in the contract. Williams contends that:

(1) Farmers encouraged Williams to file suit;

(2) that Williams kept Farmers informed at every stage of the litigation; and

(3) that Williams repeatedly encouraged Farmers to get involved in the lawsuit but Farmers refused.

The general rule governing motions for summary judgment filed pursuant to Civ. R. 56 is well-established. In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66, the Supreme Court of Ohio stated the requirements that must be met before a motion for summary judgment can be granted.

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment."

"A provision in an insurance policy for arbitration or appraisal, being designed for the protection of the insurer, may be waived by the insurer, whether the provision is optional or a condition precedent." Couch on Insurance (1982), 237, Section 50: 99. Arbitration clauses can be waived by the insurer either by express words or implication. *Sanford Constr. Co. v. Rosenblatt* (1970), 25 Ohio Misc. 99, 102; *Fickenworth v. Farmers Ins. Group* (Mar. 31, 1988), Franklin App. No. 1030, unreported. Public policy favors arbitration as a more efficient and less expensive method of conflict resolution. *Hillman v. Nationwide Mut. Ins. Co.* (Alaska 1988), 758 P.2d 1248; *McNall v. Farmers Ins. Group* (1979), 392 N.E. 2d 520, 524.

Williams essentially contends that Farmers waived arbitration in their acquiescence to the rendering of a default judgment against Payne and therefore Farmers is bound by the default judgment under the terms of the insurance contract. In support, appellant cites *Universal Underwriters v. Shuff* (1981), 67 Ohio St. 2d 172. In *Shuff,* an insured motorist was injured in an accident with an uninsured motorist. The insured filed suit against the uninsured motorist. A jury denied recovery to the insured. The insured then submitted a demand for arbitration to his insurance company. The Ohio Supreme Court held that:

"An insured who seeks to recover damages from his insurer under an uninsured motorist policy and is unsuccessful after a trial on the merits and a jury verdict, may not thereafter submit to arbitration the issue of the liability of the uninsured motorist." *Universal Underwriters v. Shuff, supra,* syllabus.

Williams also cites *Motorists Mut. Ins. Co. v. Handlovic* (1986), 23 Ohio St. 3d 179. In *Handlovic* the insureds were injured in an accident with an *underinsured* motorist. The insureds filed suit against the underinsured motorist and after a jury trial, they received a damage award. Because the insureds considered their damage award to be inadequate, they filed a demand for arbitration seeking additional compensation for their injuries. The Supreme Court of Ohio, in finding that the insureds were not entitled to submit their claim to arbitration, held that:

"If an insured, in good faith, prosecutes a lawsuit against an underinsured motorist with the knowledge of the insured's insurance company, generally both the insured and his insurance company are bound by any final judgment rendered as a result of such lawsuit that determines the liability of the underinsured motorist to the insured." *Motorists Mut. Ins. Co. v. Handlovic, supra,* syllabus.

Appellant argues that *Shuff* and *Handlovic* stand for the proposition that parties "can't have two bites of the apple." In other words, Farmers cannot request arbitration on Williams' claim after a default judgment has been rendered just to avoid paying the $57,500 default judgment.

As discussed above, this court has previously addressed the same issue in *Nationwide Mut. Ins. Co. v. Sams* (June 9, 1989), Erie App. No. 47285, unreported. In *Sams,* this court heavily relied on the analysis provided in *Bertolo v. Liberty Mut. Ins. Co.* (July 28, 1988), Cuyahoga App. No. 53796, unreported. In *Bertolo,* as in the present case, an insured motorist sought to bind his insurer to a default judgment rendered against an uninsured motorist. The *Bertolo* court acknowledged that judgments such as those rendered in *Shuff* and *Handlovic* were binding on the insurance carriers. The *Bertolo* court, however, distinguished default judgments from judgments resulting from trials on the merits of the case. The *Bertolo* court explained that an insurer could not be bound by a default judgment in the same way an insurer would be bound on a final judgment rendered on the merits. This is because the interests of the insurer become aligned with the interests of the uninsured motorist when a lawsuit is originated by the insured. If such suit proceeds to a trial on the merits, the insurer's interest is represented by the uninsured's counsel or the uninsured. However, in cases where the uninsured motorist has failed to appear or otherwise defend, it cannot be said that the insurer's interest has been represented since the cause of action has not been adjudicated on its merits. Quite simply, in cases where default judgment has been rendered against an uninsured motorist, the insurer has not had its day in court. Thus, insurers faced with situations like this one should not be accused of attempting to get "two bites of the apple." See *Bertolo, supra.*

Justice Douglas in a *Handlovic* concurring opinion perspicaciously expressed concern over the idea of default judgments becoming binding on insurance companies.

"This places an insurance carrier in a hopeless position. For example, an insured could bring an action against an uninsured motorist, obtain a default judgment when the uninsured motorist fails to answer, and then receive an award of judgment that may be excessive. Under today's decision, the insured's carrier would be liable, without the right to contest, for the judgment obtained by its insured. Such a result is patently unfair. Just because a party before this court is an insurance company does not mean it should automatically be treated unfairly."

In accordance with this court's decision in *Sams,* the Eighth District Court of Appeals decision in *Bertolo,* and Justice Douglas' concurring opinion in *Handlovic,* we find that *Shuff,* and *Handlovic* can be easily distinguished from the present fact situation since there was no

full adjudication on the merits in the present case. Farmers was not and never could be bound by the default judgment rendered against Payne and, therefore, Farmers did not impliedly waive the arbitration clause in the insurance contract by failing to intervene in the suit before Williams obtained the default judgment.

Our review of the record shows that before the default judgment was entered against the uninsured motorist, Farmers expressed a willingness to arbitrate Williams' claim. After the default judgment was entered, Farmers twice expressed willingness to arbitrate. Williams' counsel finally responded to Farmers' overtures stating in an August 1986 letter that "I will not be submitting arbitration filings." Williams subsequently filed a lawsuit against Farmers and Michigan Claim. Based on the foregoing, we find that reasonable minds could only conclude that Farmers did not, through express words or implication, waive their right to arbitration. Accordingly, appellant's sole assignment of error is found not well-taken.

App. R. 12(A) provides that "all errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error." However, this rule does not preclude a court of appeals from considering and deciding errors not assigned. Whiteside, Ohio Appellate Practice, (1987) 13-14, Text 312; *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St. 3d 198. Therefore, we will now review the second issue that was addressed by the trial court in this case; that is, whether or not Farmers and Michigan Claim acted in bad faith by refusing to be bound by Williams' default judgment.

The Supreme Court of Ohio has held:

"A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, 276; citing *Slater v. Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148.

Having already determined that Farmers and Michigan Claim were not bound by Williams' default judgment as a matter of law, we do not find that Farmers' and Michigan Claim's refusal to pay the amount of the default judgment constituted bad faith. Accordingly, this assignment of error is found not well-taken. On consideration whereof, this court finds substantial justice has been done the party complaining, and judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.

GLASSER, J., and RESNICK, J., concur.

ABOOD, J., concurs in judgment only.